UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **PHILLIPS 66, BAYWAY REFINERY,**<br><br>Petitioner,<br><br>v.<br><br>**INTERNATIONAL BROTHERHOOD OF TEAMSTERS, LOCAL 877**<br><br>Respondent. | Civ. No. 2:13-4910 (WJM)<br><br>**OPINION** |

**WILLIAM J. MARTINI, U.S.D.J.:**

This consolidated case involves two awards issued in labor arbitrations between Phillips 66, Bayway Refinery (the "Company") and the International Brotherhood of Teamsters, Local 877 (the "Union"). The first award was issued in favor of the Company by arbitrator Stanley Aiges on August 22, 2013. The Company now moves without opposition to confirm the Aiges Award. The second award was issued in favor of the Union by arbitrator Jeffrey Tener on July 17, 2013. The Company now moves to vacate the Tener Award, and the Union cross-moves to dismiss the Company's petition to vacate the Tener Award. There was no oral argument. Fed. R. Civ. P. 78(b). For the reasons set forth below, the Aiges Award is **CONFIRMED**, and the petition to vacate the Tener Award is **DISMISSED**.

**I. BACKGROUND**

The Court begins by reviewing the relevant provisions of the collective bargaining agreement (the "CBA") at issue in this case. The Court then turns to the Aiges Award and the Tener Award, which are the subject of the pending motions.

**A. The CBA**

During the relevant time period, the relationship between the Company and the Union was governed by the CBA. Smith Cert., Ex. F at J-1, ECF No. 3-4. Article 19 of the CBA sets forth a three step procedure for the resolution of disputes. At Step One, an employee presents a supervisor with a written grievance. CBA § 19-3. If the Company does not hear the grievance in two days or satisfy it in three days, the Union can appeal to

the next step. At Step Two, the Union appeals to the Department Manager. *Id.* If the Department Manager does not hear the grievance in three days or resolve it in four days, the Union can appeal to the next step. *Id.* At Step Three, the Union appeals to the Refinery Manager. *Id.* If the Refinery Manager does not hear the grievance in five days or satisfy it in ten days thereafter, the Union can submit a written request for arbitration. CBA § 20-1. Pursuant to Article 20-2 of the CBA,

> [t]he Union forfeits its right to arbitrate a grievance if it does not notify the Company in writing of its intent to arbitrate within sixty (60) calendar days following the expiration of the time limits as provided in Article 19, or within sixty (60) calendar days following receipt of the Company's answer to the grievance at the third step of the grievance procedure, whichever is later.

### B. The Aiges Award

The first arbitration award at issue in this case (AAA Case No. 18300-01220-12, Grievance No. B-151-12) was signed by arbitrator Stanley Aiges on May 13, 2013 ("the Aiges Award"). *Phillips 66, Bayway Refinery v. Int. Brotherhood of Teamsters, Local 877*, No. 13-5203, ECF No. 1-1. Because the Aiges Arbitration was a follow-on to an arbitration presided over by arbitrator Patrick Westerkamp, the Court begins with a discussion of the Westerkamp Arbitration.

In the Westerkamp Arbitration, the Union alleged that the Company was paying different Union workers different wages for the same work. *See Phillips 66, Bayway Refinery v. Int. Brotherhood of Teamsters, Local 877,* No. 12-6624, 2013 WL 618812, at *1 (D.N.J. Feb. 19, 2013). For ease of reference, the Court refers to this practice as "the Payment Practice." Arbitrator Westerkamp held that the Payment Practice grievance was not arbitrable because the Union failed to comply with the deadlines in Article 20-2. *See id.* This Court confirmed the non-arbitrability ruling. *Id.* at *3. Arbitrator Westerkamp also held that because the Payment Practice was continuing, the Union could file a new grievance under a "continuing violation" theory. *See id.* at *1. This Court vacated that holding because it addressed an issue that was not submitted to arbitration. *Id.* at *3.

In the Aiges Arbitration at issue in the case now before this Court, the Union pursued the continuing violation theory suggested by Arbitrator Westerkamp. Specifically, the Union argued that it continued to be subjected to the Payment Practice after Arbitrator Westerkamp ruled. Arbitrator Aiges held that this new grievance was not arbitrable. Aiges Award at 6-8. He explained: "[T]he Union cannot be allowed to directly violate the time limits imposed upon it under the [CBA], and then be allowed to indirectly circumvent those time limits by filing a new grievance on the identical issue." *Id.* at 7. "To do so," he continued, "would serve only to undermine the parties' grievance procedure." *Id.* Arbitrator Aiges added:

> In Section 20-2 [of the CBA], the parties plainly agreed that the Union 'forfeits and waives its right to arbitrate a grievance' if it does not abide by specified time limits for filing for arbitration. Giving the rulings of Arbitrator Westerkamp and the District Court, there is no escaping the conclusion [that] the Union has waived and forfeited its right to hear the merits of its claim regarding [the Payment Practice].

*Id.* at 7-8. On August 29, 2013, the Company filed the instant petition to confirm the Aiges Award. The case was assigned to the Honorable Faith S. Hochberg and given docket number 2:13-cv-05203.

### C. The Tener Award

The second arbitration award at issue in this case (AAA Case No. 18-300-01345-12, Grievance No. B-005-12) was signed by Arbitrator Jeffrey Tener on July 17, 2013. Smith Cert., Ex. A. The grievance at issue in the Tener Arbitration arose out of a December 1, 2011 warning letter charging that Union employee John Pajak did not wear required safety equipment. *Id.* at Ex. F at J-2 & J-3. In his award, Arbitration Tener held only that the grievance was arbitrable. Arbitrator Tener left the merits determination for a future award. As far as the Court can tell, that future award has not been issued.

On August 14, 2013, the Company petitioned to vacate the Tener Award. The case was assigned to the undersigned and given docket number 2:13-cv-04910. On August 30, 2013, the Union responded by moving to dismiss the Company's petition.

On September 4, 2013, the Company moved before Judge Hochberg to consolidate its petition to confirm the Aiges Award with its petition to vacate the Tener Award. Judge Hochberg granted the Company's motion on September 13, 2013.

## II. LEGAL STANDARD

The Court has jurisdiction over this labor arbitration matter pursuant to Section 301 of the Labor Management Relations Act ("Section 301"), 29 U.S.C. § 185. Section 301 vests courts with the authority to confirm labor arbitration awards and to vacate labor arbitration awards. "If an arbitrator's award draws its essence from the collective bargaining agreement, and is not merely his own brand of industrial justice, the award is legitimate." *Akers Nat'l Roll Co. v. United Steel, Paper & Forestry, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union*, 712 F.3d 155, 160 (3d Cir. 2013) (internal quotations and citations omitted). "Indeed, a reviewing court may disturb an arbitrator's award 'only where there is a manifest disregard of the agreement, totally unsupported by principles of contract construction and the law of the shop.'" *Id.* (quoting *Ludwig Honold Mfg. Co. v. Fletcher*, 405 F.2d 1123, 1128 (3d Cir. 1969)). "[I]f an arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, the fact that a court is convinced he committed serious error does not suffice to overturn

3

his decision." *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001).

### III. DISCUSSION

Now before the Court are three motions. First, the Company moves without opposition to confirm the Aiges Award. Next, the Company moves to vacate the Tener Award. Finally, the Union moves to dismiss the Company's petition to vacate the Tener Award.

#### A. **The Court Will Confirm the Aiges Award.**

The Company moves without opposition to confirm the Aiges Award. The Court agrees that the Aiges Award should be confirmed.

Article 20-2 of the CBA provides that the Union "forfeits and waives its right to arbitrate a grievance" if it does not provide written notice of its intent to arbitrate within specified time limits. On Arbitrator Aiges's reading of Section 20-2, if the Union forfeits its right to challenge injuries caused by a particular practice during a certain time period, the Union forfeits its right to challenge injuries caused by that same practice in a later time period.

Based on his reading of Article 20-2, and based on the Westerkamp Award and this Court's confirmation of the Westerkamp Award, Arbitrator Aiges held that the Union's continuing violation grievance was not arbitrable. The Aiges Award "draws its essence from the collective bargaining agreement," *Akers*, 712 F.3d at 160; it does not exhibit "manifest disregard," *Garvey*, 532 U.S. at 509, for the terms of the CBA. The Union does not dispute this conclusion. Accordingly, the Court will **GRANT** the Company's motion and **CONFIRM** the Aiges Award.

#### B. **The Court Will Not Vacate the Tener Award.**

The Union argues that the Court cannot entertain the Company's motion to vacate the Tener Award because the Tener Award is not yet final. The Court agrees with the Union.

In general, courts cannot confirm or vacate arbitration awards that are interim, or not yet final. This rule, referred to as the "complete arbitration rule," provides that "judicial review of incomplete arbitration awards is inappropriate in all but the 'most extreme' situations." *Union Switch & Signal Div. Am. Std. Inc. v. United Elec., Radio & Mach. Workers of Am.*, 900 F.2d 608, 612 (3d Cir. 1990) (quoting *Millmen Local 550 v. Wells Exterior Trim*, 828 F.2d 1373, 1374 (9th Cir. 1987)). The rule is grounded in efficiency concerns. As the Ninth Circuit has held, "allow[ing] judicial intervention prior to the final [arbitration] award would contravene the fundamental federal labor policy of deference to contractual dispute resolution procedures, and would interfere with the purpose of arbitration: the speedy resolution of grievances without the time and expense

4

of court proceedings." *Millmen*, 828 F.2d at 1375. While the Court recognizes that the First Circuit has authorized District Courts to confirm arbitral awards that resolve liability but not damages, *Hart Surgical, Inc. v. Ultracision, Inc.*, 244 F.3d 231 (1st Cir. 2001), the First Circuit has never extended this rule to arbitral awards that resolve only arbitrability. *See Int. Shipping Agency, Inc. v. Union Empleados de Muelles de Puerto Rico*, 547 F. Supp. 2d 116, 121 n.1 (1st Cir. 2001) ("[T]he First Circuit Court of Appeals' holding in . . . *Hart Surgical, Inc.* . . . is clearly limited to cases in which the parties formally agree to bifurcate arbitration into liability and damages phases.").

Here, Arbitrator Tener has decided that the grievance before him is arbitrable. Arbitrator Tener's decision is an interim decision because it does not resolve the case. Accordingly, the complete arbitration rule bars the Court from confirming or vacating the Tener Award. *See Orion Pictures Corp. v. Writers Guild of Am. W., Inc.*, 946 F.2d 722, 725 (9th Cir. 1991) ("Once the arbitrator has asserted jurisdiction over a dispute-even limited to ruling that he has jurisdiction to determine his own jurisdiction-a district court generally may not review the arbitrator's rulings under section 301 of the Labor Management Relations Act until the arbitrator relinquishes jurisdiction by issuing a final award."). The Company maintains that the complete arbitration rule notwithstanding, the Court should still address its vacatur arguments because this case presents an "extreme situation." *Union Switch*, 900 F.2d at 612. The supposed "extreme situation" is that a ruling in this case is outcome determinative for a great many additional cases between the Company and the Union. The Court does not agree that this case presents an extreme situation. This is not a case, for example, where an interim order is needed to preserve assets or prevent irreparable harm. *See Pac. Reinsurance Mgmt. Corp. v. Ohio Reinsurance Corp.,* 935 F.2d 1019, 1023 (9th Cir. 1991) ("[T]emporary equitable orders calculated to preserve assets or performance needed to make a potential final award meaningful . . . are final orders that can be reviewed for confirmation and enforcement by district courts under the FAA."). Indeed, the Company makes no showing that it will be prejudiced if an arbitrator issues a merits decision here before this Court decides arbitrability.

Accordingly, the Court will **DENY** the Company's motion to vacate the Tener Award, and the Court will **GRANT** the Union's motion to dismiss the Company's petition to vacate the Tener Award. The petition to vacate the Tener Award is **DISMISSED WITHOUT PREJUDICE**. After a final arbitral award is issued, the Company may choose to refile a petition to vacate.

## IV. CONCLUSION

For the foregoing reasons, the Court will **GRANT** the Company's motion to confirm the Aiges Award. Accordingly, the Aiges Award is **CONFIRMED**. The Court will **DENY** the Company's petition to vacate the Tener Award, and the Court will **GRANT** the Union's motion to dismiss the Company's petition to vacate the Tener Award. The Company's petition to vacate the Tener Award is **DISMISSED WITHOUT PREJUDICE**. An appropriate Order follows.

          /s/ William J. Martini
     **WILLIAM J. MARTINI, U.S.D.J.**

**Date: January 29, 2014**